United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| Ed Gonzalez Ayala, Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-23000-Civ-Scola |
| | ) | |
| Dermaforce Partners, LLC, et al., | ) | |
| Defendants. | ) | |

**Order Remanding Case**

    This matter is before the Court on the Plaintiff Ed Gonzalez Ayala's ("Gonzalez Ayala") motion to remand this case to Miami-Dade County Circuit Court (ECF No. 32) and motion to strike the Defendants' late response opposing remand (ECF No. 36). On September 9, 2022, the Defendant Dermaforce Partners, LLC removed this action from the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, asserting this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). (ECF No. 1.) On December 1, 2022, however, Gonzalez Ayala filed an amended complaint, adding for the first time as Defendants Dermaforce Holdings, LLC, L'Oreal U.S.A., Inc., and Jessica Rivera, as personal representative of the Estate of Wellington Rivera (the "Estate") (collectively, the "Defendants"). (ECF No. 14.) Realizing some months later that both he and the Estate are citizens of Florida, Gonzalez Ayala then moved to remand this matter on the ground that there is no longer diversity jurisdiction. (ECF No. 32.) Because Gonzalez Ayala filed his motion on February 27, 2023, the Defendants' response (along with all supporting materials) was due by March 13, 2023. *See* S.D. Fla. L.R. 7.1(c)(1). However, the Defendants did not file that response until March 17, 2023, and did not file a supporting declaration until March 23, 2023. (ECF Nos. 33, 34.) On March 24, 2023, Gonzalez Ayala filed both the motion to strike the Defendants' untimely response (ECF No. 36) and his reply in support of his motion to remand (ECF No. 37). The Court has now reviewed the record, the parties' briefs, and the relevant legal authorities. For the reasons stated below, the Court **denies** Gonzalez Ayala's motion to strike (**ECF No. 36**) and **grants** his motion to remand (**ECF No. 32**).

    The Court will first briefly address Gonzalez Ayala's motion to strike the Defendants' untimely response. Under Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure, a court may extend the time in which a party may act "on a motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). "Whether neglect is excusable is

an equitable determination 'taking account of all relevant circumstances surrounding the party's omission.'" *Fisher v. Office of the State Atty. 13th Judicial Circuit Fla.*, 162 F. App'x 937, 940 (11th Cir. 2006) (quoting *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395, 113 S. Ct. 1489, 1498 (1993)). Such relevant "circumstances include the danger of prejudice to the opposing party, 'the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'" (*Id.*) District courts are afforded discretion under Rule 6(b) to accept untimely filings but are not compelled to do so. *See McCool v. Bridgestone/Firestone N. Am. Tire, Inc.*, 222 F. App'x 847, 858 (11th Cir. 2007) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 896, 110 S. Ct. 3177, 3192, 111 L. Ed. 2d 695 & n.5 (1990)).

There is no question that the Defendants' response in opposition to Gonzalez Ayala's motion to remand is untimely. Moreover, the Defendants filed their response without acknowledging its lateness or seeking leave from the Court for an extension of time. Indeed, the Defendants only provided an explanation for their late filing when prompted to do so by Gonzalez Ayala's motion to strike.[1] The Court does not take these infractions lightly, and notes that in other circumstances they would likely suffice to strike the Defendants' response. *See, e.g., United Nat'l Ins. Co. v. Owl's Nest of Pensacola Beach, Inc.*, No. 3:05cv374/MCR/MD, 2006 U.S. Dist. LEXIS 42859, at *13 (N.D. Fla. June 8, 2006) (striking untimely response to motion for summary judgment where party failed to acknowledge the lateness of his filing or seek leave from the court to file out of time). Having said that, here, the Court will exercise its discretion to consider the Defendants' response. Perhaps most importantly, Gonzalez Ayala will not be prejudiced by the Court's denial of his motion to strike because he has filed a reply that thoroughly addresses the points raised in the Defendants' response. Moreover, the Defendants have explained that their late filing was inadvertently caused by the departure of the associate attorney formerly handling this matter, and the length of the delay was not such as to significantly interfere with these proceedings. As such, the Court finds excusable neglect for the Defendants' untimely filing and declines to strike the Defendants' response in opposition to remand. (ECF No. 36.)

---

[1] The Court construes the Defendants' response in opposition to Gonzalez Ayala's motion to strike as a post-deadline motion for extension of time. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 875, 110 S. Ct. 3177, 3181 (1990) ("Although Rule 6(b) allows a court, 'in its discretion,' to extend any filing deadline 'for cause shown,' a *post*-deadline extension must be 'upon motion made,' . . . .").

Moving to the merits of Gonzalez Ayala's motion to remand, the Court must determine whether Gonzalez Ayala is correct that the addition of Jessica Rivera, as personal representative of the Estate of Wellington Rivera, destroys diversity jurisdiction in this case.[2] "Diversity jurisdiction requires complete diversity," meaning that "every plaintiff must be diverse from every defendant." *Leyva v. Daniels*, 530 F. App'x 933, 934 (11th Cir. 2013) (quoting *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998)). "Where," as in this case, "an estate is a party, the citizenship that counts for diversity purposes is that of the decedent, and [he] is deemed to be a citizen of the state in which [he] was domiciled at the time of h[is] death." *King v. Cessna Aircraft Co.*, 505 F.3d 1160, 1170 (11th Cir. 2007) (citing 28 U.S.C. § 1332(c)(2); *Palmer v. Hosp. Auth. of Randolph County*, 22 F.3d 1559, 1562 n.1 (11th Cir. 1994)); *see also Lyons v. O'Quinn*, 607 F. App'x 931, 933 n.3 (11th Cir. 2015) (same). "A person's domicile is the place of 'his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom.'" *McCormick v. Aderholt*, 293 F.3d 1254, 1257-58 (11th Cir. 2002) (quoting *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974), *cert. denied*, 419 U.S. 842, 95 S. Ct. 74, 42 L. Ed. 2d 70 (1974)). In line with this, "a change of domicile requires '[a] concurrent showing of (1) physical presence at the new location with (2) an intention to remain there indefinitely.'" *Id.* Whether a change in domicile has occurred presents a question "of compound fact and law." *Welsh v. Am. Sur. Co.*, 186 F.2d 16, 18 (5th Cir. 1951).

The Defendants argue that there remains complete diversity between the parties because the decedent, Wellington Rivera, was not domiciled in Florida at the time of his death on August 24, 2021. (Resp. to Mot. to Remand 1, ECF No. 33.) In support of their position, they cite various facts—supported by the declaration of Jessica Rivera, the decedent's spouse—purportedly tying the decedent to the northeast United States. Among other things, the Defendants point out that Mr. Rivera was employed by the Defendant Dermaforce Partners, LLC; that, while employed by Dermaforce Partners, LLC, he resided with Mrs. Rivera in East Orange, New Jersey; that he owned businesses and property in New York; and that he had all business mail directed to an apartment in New York, where he was the secondary tenant on a lease with his mother. (*Id.* at 5.)

---

[2] The Court notes in passing that it is doubtful whether either of Gonzalez Ayala's complaints adequately addressed the citizenship of the other Defendants for purposes of invoking this Court's diversity jurisdiction. (*See* Am. Compl. ¶¶ 3–5, ECF No. 14 (allegations seem to mistake, for example, the citizenship requirements for limited liability companies with those for corporations).) However, this order addresses only the parties' arguments regarding the citizenship of the Estate because that determination alone requires that the Court remand this case to state court.

However, the Defendants acknowledge that "in July 2021" Mr. Rivera "came to Florida," and, critically, absent from their facts is any suggestion that Mr. Rivera *intended* to stay in the northeast following his move to Florida. (*Id.*)

In contrast, Gonzalez Ayala's reply asserts that, at the time of his death, Mr. Rivera had moved to Florida with the intention to remain here indefinitely. (Reply in Supp. of Mot. to Remand 2–3, ECF No. 37.) Gonzalez Ayala's position is supported by various sources. For example, he relies on the declaration of Yvonee Souchet, Mr. Rivera's "lifelong friend," who states that Mr. Rivera contacted her in February 2021 about moving to Florida and starting a real estate investment business here. (*Id.* at 4.) Ms. Souchet also declares that, to that end, Mr. Rivera negotiated a deal on a condominium, created a Florida limited liability company (naming her, a Florida resident, as registered agent), and put his New York business and property up for sale, intending to use the capital for his new business and investments in Florida. (*Id.*) Ms. Souchet explains that the decedent ultimately moved into his new Florida condo in early July 2021, and that Mrs. Rivera joined him soon after. (*Id.* 4–5.) Ms. Souchet declares that Mr. Rivera "absolutely intended to reside in Florida indefinitely and to start a new life[,]" and supports her declaration with screenshots of her conversations with Mr. Rivera. (*See* Y. Souchet Decl. ¶ 12, ECF No. 38-1; Ex. 1 to Y. Souchet Decl., ECF No. 38-2.) In addition to Ms. Souchet's declaration, Gonzalez Ayala provides copies of various documents evidencing Mr. Rivera's move to Florida. (*See generally* ECF No. 38.) Perhaps most important, however, is Gonzalez Ayala's provision of a copy of Ms. Rivera's sworn Petition for Administration of the Estate of Wellington Rivera in Case No. 2021-004928-CP02, in the probate division of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. (*See* ECF No. 38-8.) There, Ms. Rivera unequivocally represents, under penalty of perjury, that "this is the county where the decedent was domiciled." (*Id.* at ¶ 4.) Thus, not only has Gonzalez Ayala provided affirmative evidence that Mr. Rivera was domiciled in Florida in August 2021, but he has also completely undermined Ms. Rivera's declaration in support of the Defendants' position.

In short, after reviewing all the facts and supporting evidence, the Court has no difficulty concluding that Mr. Rivera was domiciled in Florida at the time of his death, and that, as such, his Estate is considered a citizen of Florida for purposes of diversity jurisdiction. Accordingly, because Gonzalez Ayala is also a citizen of Florida, there is no diversity between the parties, and the Court cannot exercise subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

Therefore, for the reasons stated above, the Court **denies** Gonzalez Ayala's motion to strike (**ECF No. 36**) and **grants** his motion to remand (**ECF**

**No. 32**). The Court **remands** the case to state court. The Court **directs** the Clerk to **close** this case and take all necessary steps to ensure the prompt remand of this matter and the transfer of this file back to the **Circuit Court for the Eleventh Judicial Circuit in and for Miami-Dade County**. Any pending motions are denied as moot.

**Done and ordered** at Miami, Florida on May 25, 2023.

_____
Robert N. Scola, Jr.
United States District Judge